UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY RICHARDSON,

        Petitioner,

                                    CASE NO. 09-CV-13239

v.                             HONORABLE JOHN CORBETT O'MEARA

JEFFREY WOODS,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

### I.  Introduction

This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Larry Richardson ("Petitioner") was convicted of second-degree murder, MICH. COMP. LAWS § 750.317, following a jury trial in the Wayne County Circuit Court.  He was sentenced to 35 to 55 years imprisonment in 2003.  In his pleadings, Petitioner raises claims concerning the state of mind jury instruction, the bind-over on first-degree murder, the sufficiency of the evidence, the intimidation of witnesses, the presentation of false testimony, prosecutorial misconduct, the failure to preserve evidence, the effectiveness of trial and appellate counsel, and cumulative error.  For the reasons set forth herein, the Court denies the petition for a writ of habeas corpus.  The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

### II.  Facts and Procedural History

Petitioner's conviction arises from the stabbing death of employee George Morad at May's Market in Detroit, Michigan on October 30, 2002.  At trial, Ramzi Moshe, the store owner and the

victim's brother-in-law, testified that Petitioner initially came to the store between 12:00 p.m. and 1:00 p.m. accompanied by a teenage boy and a pit bull.  Moshe told Petitioner that dogs were not allowed in the store.  Petitioner cursed at Moshe and attempted to buy a 40-ounce beer.  Moshe refused to sell him the beer.  Petitioner cursed at him, threatened to kill him, took another beer, and left the store without paying for it.  Moshe followed him outside and told Petitioner to return the beer.  Moshe  then feared the dog being let loose, so he told Petitioner to forget about it and went back into the store.

Petitioner returned to the store at 4:00 p.m. accompanied by the teenage boy but without the dog.  Petitioner gave Moshi $2.00 for the beer and asked to buy a cigar.  Moshi refused to sell him the cigar because Petitioner had disrespected him and said that he was not welcome at the store. Petitioner then grabbed some doughnuts and candy and tried to walk out without paying.  Morad and Moshe's brother, Leon Salman, intervened, took the items from Petitioner, and physically removed him from the store.  Petitioner walked back into the store and grabbed the doughnuts and candy again.  Morad and Salman took the items from him and shoved him out of the store.  Moshe called the police because Petitioner kept returning to the store.

Petitioner returned to the store a short time later.  Moshe heard Petitioner yell, "I'm going to kill you, I'm going to kill you," and saw Morad running from him.  He heard Morad take a deep breath and saw him fall near the coolers.  He also saw a bloody knife in Petitioner's hand.  Petitioner remained in the store for a few moments and then went outside.  Moshe did not see any of his employees armed with a weapon during the altercations in the store.  Moshe also recalled that a teenage boy and girl followed Petitioner into the store and started crying when Petitioner stabbed Morad.  They yelled at Petitioner and asked him why he did it.  After Morad was stabbed, Salman

2

came into the store, grabbed a pipe, and went after Petitioner. Moshe called the police. Moshe also testified that store security cameras captured some of the events that day.

Robert Wilson, Petitioner's 13-year-old cousin, testified that he walked to the store with his pit bull and Petitioner to get Petitioner a beer between 12:00 p.m. and 1:00 p.m. on October 30, 2002. He was told that dogs could not be in the store and took the dog outside. Petitioner came out with a beer and they returned home. Petitioner went to the store a second time alone. Petitioner and Wilson went to the store a third time to get Petitioner a cigar and Wilson a pop. Ramzi Moshe told them that they had to go. Petitioner would not leave and began fighting with two of the men. Wilson pulled Petitioner out of the store as the men continued to hit him. Petitioner exited the store and then went right back inside. Wilson testified that Moshi, Salman, and then George Morad fought with him again. Wilson acknowledged that he had not previously testified that Morad was involved in this altercation. Eventually, he and Petitioner returned home. Wilson and his sister, Artina Dukes, tried to keep Petitioner at home, but he pushed them out of the way, jumped down the stairs, left the house, and ran across traffic to the store. When Wilson arrived at the store, he heard Petitioner ask Morad if he was the one who did this to him. Wilson also testified that he saw Morad hit Petitioner with his right hand and then saw Petitioner stab Morad in the chest. Wilson acknowledged that he had not previously said that Morad hit Petitioner. Wilson and his sister tried to help Morad. Wilson saw Salman beating Petitioner with the pipe outside and his sister told Petitioner to go home.

Artina Dukes, Petitioner's 18-year-old cousin, testified that she woke up that afternoon and saw Petitioner coming out of the bathroom with a bloody face and missing a tooth. She and her brother tried to stop Petitioner from returning to the store, but Petitioner was too angry and upset.

3

Petitioner shoved her, jumped down the stairs, and left the house. She saw him dart through traffic to cross the street and enter the store. When she arrived at the store, she heard Petitioner ask Morad, "Did you do this?" and "Why did you do this to me?" Before Morad could reply, Petitioner stabbed him in the chest with a big knife. Dukes did not see Morad with any weapons or see him touch Petitioner. She was shocked by the incident. She told Petitioner he was stupid and instructed him to go home until the police came. She tried to help Morad by urging him to breath until EMS arrived. She subsequently saw Petitioner on the corner and saw a man from the store beating him with a pole. She ran across the street to help Petitioner and put him in her grandmother's car. When the police came, she observed a pole and a broken knife on the ground.

John Hudson testified that he was at a nearby car wash at the time of the incident. He saw Petitioner across the street screaming and pacing with a knife in his hand. He called 911. He then went into the store, saw the victim bleeding on the floor, checked for a pulse, and waited for police to arrive with an off-duty paramedic.

Several Detroit police officers testified at trial about their arrival upon the scene, Petitioner's arrest, and their investigation of the crime. Officer Earnest Cleaves recovered an eight-inch broken and bloody butcher knife from a corner near the store. He also observed the victim and blood splatters in the store and recovered a steak knife near the counter. He did not believe that either of the recovered knives matched the knives kept at the deli counter in the store. Both knives were admitted into evidence. Officer Cleaves was given one surveillance tape from the store which he gave to homicide detectives.

Officer Gregory Tourville testified that he arrived at the scene with his partner at 4:25 p.m. After speaking to a witness, he arrested Petitioner and put him in his squad car, but did not advise

4

him of his rights.  Officer Tourville observed the victim lying in a pool of blood on the floor of the store and stayed at the scene until EMS arrived.  On the way to the police station, Petitioner spontaneously asked him why he was being arrested and said, "I only stabbed him once.  He jumped me."  Petitioner did not indicate that the victim had a weapon.

Homicide Investigator Barbara Simon testified that she advised Petitioner of his rights, obtained a signed waiver, and interviewed him at the police station.  Petitioner's statement was admitted into evidence and read into the record.  Petitioner admitted fighting with the store employees and stabbing the victim.

Michigan State Police Detective Sergeant Arnett Gadson, an expert in forensic video analysis, testified about his work with the store surveillance video materials.  The digitized video was admitted into evidence and played for the jury.

Petitioner presented several defense witnesses.  Detroit Homicide Detective Gerald Thomas testified that he requested that the knives recovered from the scene be tested for blood, but not fingerprints.  He did not obtain results from those tests because he did not submit samples from Petitioner or the victim.  Detective Thomas also interviewed Robert Wilson and Artina Dukes and took written statements.

Leon Salman testified that he arrived to work at the store at 3:00 or 3:30 p.m. on October 30, 2002. George Morad arrived around 4:00 p.m.  Salman heard his brother tell Petitioner that he could not come to the store anymore.  Salman and Petitioner began pushing each other when Petitioner tried to take donuts from the store.  Salman and Morad continued pushing and shoving Petitioner outside the store.  Petitioner was trying to hit them, but Morad held his hands.  When Salman and Morad went back into the store, Petitioner came back inside and they pushed him outside again.

5

Neither he nor Morad were armed with a weapon. Salman then left the store to make a deposit at the bank and was not present when the stabbing occurred. When Salman returned, he saw Petitioner standing in the middle of the street holding a bloody knife. Salman went into the store and learned that Morad had been stabbed. Salman picked up a long blue pipe and ran after Petitioner. Salman hit Petitioner twice with the pipe, struggled with him, and held him down until the police arrived.

Johnnie Mae Robinson, Petitioner's grandmother, testified that she saw Petitioner on the corner being detained by Salman between 4:00 and 5:00 p.m. on October 30, 2002. Salman had a blue pole and was holding Petitioner down. Petitioner's face was bleeding and he was missing a tooth. Robinson told Salman to let Petitioner go. Eventually, Salman was pulled away from Petitioner. Robinson cussed at Petitioner and told him to go sit in her parked car. The police arrived about 10 minutes later. While the police investigated the incident, Robinson waited outside. She later learned that Petitioner had stabbed the victim.

Petitioner also testified on his own behalf at trial. He recounted his initial visits to the store and physical expulsions by the employees. He indicated that the expulsions were fights, not merely pushing and shoving matches. Petitioner testified that he returned home, discovered that he was missing a tooth and had a bloody face, and took a pain pill. He also believed that he lost his wallet and keys during the fights. He returned to the store to look for those items. As soon as he entered the store, Morad confronted him and pulled a knife. Petitioner feared for his life, so he pulled out a knife he carried for protection and stabbed Morad once in self-defense. Morad pushed him and ran away. Petitioner's cousins began screaming. Petitioner left the store and went across the street where he was assaulted by Salman and eventually arrested by police. Petitioner admitted speaking to police about the incident, but claimed that they left many details out of his written statement.

6

At the close of trial, the jury convicted Petitioner of second-degree murder.  The trial court subsequently sentenced him to 35 to 55 years imprisonment.

Following his conviction and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals asserting that: (1) the trial court erred in instructing the jury on state of mind, and (2) trial counsel was ineffective for failing to object to the instructions.  The court denied relief on those claims and affirmed Petitioner's conviction.  *People v. Richardson*, No. 248159, 2004 WL 2314656 (Mich. Ct. App. Oct. 14, 2004) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied.  *People v. Richardson*, 472 Mich. 918, 696 N.W.2d 720 (2005).

Petitioner subsequently filed a motion for relief from judgment with the trial court asserting that: (1) the magistrate judge abused his discretion in binding him over on a first-degree murder charge and counsel was ineffective for failing to file a motion to quash, (2) the prosecutor failed to present sufficient evidence to support his conviction, (3) the police intimidated witnesses and the prosecution presented false testimony at trial, (4) the prosecutor engaged in misconduct by making improper remarks during closing arguments, (5) the police failed to preserve the knives and test them for evidence, (6) trial counsel was ineffective for failing to seek suppression of his statements, for failing to investigate, and for failing to obtain medical and cell phone records, (7) appellate counsel was ineffective for failing to raise the foregoing issues on direct appeal, and (8) cumulative error denied him due process.  The trial court denied the motion, finding that the claims were barred by procedural default and that Petitioner had not shown good cause and/or actual prejudice under Michigan Court Rule 6.508(D)(3) to excuse his failure to raise the claims on direct appeal.  *People v. Richardson*, No. 02-015221 (Wayne Co. Cir. Ct. May 18, 2007) (unpublished).  Petitioner filed

7

an application for leave to appeal with the Michigan Court of Appeals, which was denied for failure

to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)."   *People v.*

*Richardson*, No. 285554 (Mich. Ct. App. Oct. 30, 2008) (unpublished).   Petitioner also filed an

application for leave to appeal with the Michigan Supreme Court, which was similarly denied.

*People v. Richardson*, 484 Mich. 865, 769 N.W.2d 234 (2009).

Petitioner thereafter instituted this federal habeas action raising the claims presented to the

state courts on direct appeal and collateral review of his convictions.   Respondent has filed an

answer to the petition contending that it should be denied because the claims lack merit and/or are

barred by procedural default.

**III.   Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his petition after the

AEDPA's effective date.   *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).   The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable
>         application of, clearly established Federal law, as determined by the
>         Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of
>         the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts

8

that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those

9

arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, _ U.S. _, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See*

28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

## IV.  <u>Analysis</u>

### A.  <u>Jury Instruction Claim</u>

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in instructing the jury on state of mind.  Petitioner objects to the following instruction:

> The defendant's state of mind may be inferred from the kind of weapon used, the type of wound inflicted, the acts and words of the defendant, and any [other] circumstances surrounding the killing.

> You may infer that the defendant intended to kill if he sued a dangerous weapon in a way that was likely to cause death.  Likewise you may infer that the defendant intended the usual result that followed form the use of a dangerous weapon.

Trial Tr., Vol. V, pp. 77-78.  Respondent contends that this jury instruction claim is barred by procedural default and lacks merit.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).  The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001).  A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court

11

rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

Here, the Michigan Court of Appeals rendered the last reasoned opinion on the jury instruction issue. In dismissing the claim, the court relied upon Petitioner's failure to object at trial. *See Richardson*, 2004 WL 2314656 at *1. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Dixon*, 217 Mich. App. 400, 409, 552 N.W.2d 663 (1996); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied relief on this claim based upon a procedural default – the failure to object to the jury instructions at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting

from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *See Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

Petitioner alleges ineffective assistance of trial counsel as cause to excuse his procedural default. As explained *infra*, however, Petitioner has not shown that counsel was constitutionally ineffective. He has thus failed to establish cause to excuse his procedural default. The Court need not address the issue of prejudice when a habeas petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983); *Bell v. Smith*, 114 F. Supp. 2d 633, 638 (E.D. Mich. 2000). Nonetheless, the Court finds that Petitioner cannot establish prejudice (or entitlement to habeas relief) as this claim lacks merit for the reasons stated by the Michigan Court of Appeals in reviewing the issue. *See Richardson*, 2004 WL 2314656 at *1 (finding, in the alternative, that the state of mind instruction was proper because it left it to the jury to determine whether to draw an inference that Petitioner acted with the intent to kill from his use of a dangerous weapon and did not direct the jury to presume such intent). The challenged jury instruction was proper and did not render Petitioner's trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

Petitioner has also not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995); *Murray*, 477 U.S. at 496. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. His jury instruction claim is thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

### B.   Ineffective Assistance of Counsel Claim

As noted, Petitioner relatedly asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the state of mind jury instruction. Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of defense counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they denied the petitioner of a fair trial

14

or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id*. at 788.

15

The Michigan Court of Appeals denied relief on this claim, finding that Petitioner could not establish that counsel was ineffective because the challenged jury instruction was not erroneous. *Richardson*, 2004 WL 2314656 at *1. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Given the state court's ruling that the jury instruction was proper as a matter of state law, Petitioner cannot establish that trial counsel erred or that he was prejudiced by counsel's conduct. Any objection to the state of mind jury instruction by counsel would have been overruled. Counsel cannot be deemed ineffective for failing to make a futile objection or motion. *See, e.g., United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Petitioner has not established that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

## C.    **Procedural Default of Claims**

Respondent contends that Petitioner's remaining claims concerning the bind-over decision, the sufficiency of the evidence, the intimidation of witnesses, the presentation of false testimony, prosecutorial misconduct, the failure to preserve evidence, the effectiveness of defense counsel, and cumulative error are barred by procedural default because Petitioner first raised those claims on post-conviction collateral review and the state courts denied him relief pursuant to Michigan Court Rule 6.508(D).

As discussed *supra*, federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright*, 433 U.S. at 85-87. The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White*, 431 F.3d at 524; *Howard*, 405 F.3d at 477; *Coleman*, 244 F.3d

16

at 539; *see also Ylst*, 501 U.S. at 803-05.

Petitioner first presented these claims to the state courts in his motion for relief from judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* MICH. CT. R. 6.508(D)(3). The Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court clearly denied relief on procedural grounds. The trial court cited Michigan Court Rule 6.508(D)(3) and concluded that Petitioner had failed to demonstrate good cause and actual prejudice because his underlying claims lacked merit and no miscarriage of justice had occurred. Accordingly, Petitioner's claims concerning the bind-over decision, the sufficiency of the evidence, the intimidation of witnesses, the presentation of false testimony, prosecutorial misconduct, the failure to preserve evidence, the effectiveness of defense counsel, and cumulative error are procedurally defaulted.

Again, as noted, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual

prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 750-51; *Gravley*, 87 F.3d at 784-85; *see also Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default. In order to establish ineffective assistance of appellate counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  In determining whether counsel's performance was deficient,

> [t]he court must … determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690.  Judicial scrutiny of counsel's performance is thus "highly deferential." *Id*. at 689.  The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.

18

1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail."  *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome."  *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal.  *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance.  Appellate counsel presented issues on direct appeal concerning the jury instructions and the effectiveness of trial counsel.  Such issues, although ultimately unsuccessful, were legitimate.  The claims presented in the motion for relief from judgment are not obviously stronger or more meritorious than the ones raised by appellate counsel on direct appeal.  To be sure, the trial court, in considering the cause and prejudice test, found that the claims lacked merit.  Petitioner has not shown that appellate counsel erred and/or that he was prejudiced by counsel's conduct as required under the *Strickland* standard.  He has thus failed to establish cause to excuse his procedural default.

The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default.  *See Smith*, 477 U.S. at 533; *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).  Nonetheless, even assuming that Petitioner could demonstrate cause, he cannot establish prejudice because the defaulted claims lack merit for the reasons stated by the state trial

19

court in denying his motion for relief from judgment, as well as for the reasons stated by Respondent in the answer to the petition. *See* Wayne Co. Cir. Ct. Op., pp. 2-8; Answer, pp. 19-32.

Lastly, as discussed *supra*, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. He has made no credible showing of actual innocence. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### D. <u>Ineffective Assistance of Appellate Counsel Claim</u>

Petitioner also seems to assert an independent claim that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the foregoing defaulted issues on direct appeal. Petitioner is not entitled to relief on any such claim. As explained *supra*, he has failed to show that counsel erred and/or that he was prejudiced by counsel's conduct in order to establish that appellate counsel was ineffective under the *Strickland* standard because the defaulted claims lack merit. Habeas relief is therefore not warranted on this claim.

## V. <u>Conclusion</u>

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained his habeas petition and the petition must therefore be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to

20

deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits. *Id.* at 336-37. When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85.

The Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural ruling. A certificate of appealability is not warranted. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as any appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed *in forma pauperis* on appeal are **DENIED**.


s/John Corbett O'Meara
United States District Judge


Date: December 14, 2011

21

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, December 14, 2011, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager